**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SALON 8736, INC.,**<br>8736 Belair Road<br>Baltimore, Maryland 21236,<br><br>      *Plaintiff,*<br><br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>      *Defendant.* | Case No.<br>Filed Electronically<br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR REFUND

Salon 8736, Inc., ("Plaintiff"), by and through its undersigned counsels, and pursuant to 26 U.S.C. ("I.R.C.") § 7422, hereby submits this Complaint for Refund against the United States of America ("Defendant"), seeking a refund of an employee retention credit, interest pursuant to I.R.C. § 6611, and reasonable costs and attorneys' fees pursuant to I.R.C. § 7430 and in support thereof states as follows:

## I. INTRODUCTION

1. On or about March 27, 2020, in response to the COVID-19 pandemic, congress passed the Coronavirus Aid Relief and Economic Security Act ("the CARES Act").

2. The CARES Act created an employee retention credit ("E.R.C.") on eligible wages paid between March 12, 2020, and December 31, 2020. The credit provided 50% of up to $10,000 of qualified wages.

3. The credit was available if the business had an initial 50% or more reduction in gross receipts against the same quarter from 2019 and maintained a 20% or more reduction in subsequent quarters, or the business's operations were fully or partially suspended due to a government order.

4. Employers with more than 100 full-time employees were "large employers". Large employers' most significant limitation was they could only use wages paid to employees to not work (not all qualified wages).

5. Claiming an E.R.C. is effectuated through the filing of Forms 941-X (Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund).

6. On or about December 27, 2020, congress passed the Consolidated Appropriations Act ("C.A.A.").

7. The C.A.A. extended eligibility for E.R.C. through June 30, 2021. Moreover, the E.R.C. became worth 70% of up to $10,000 of qualified wages per employee per quarter instead of annually.

8. The definition of Large Employer was also changed to include those with more than 500 full-time employees.

9. On or about March 11, 2021, Congress passed the American Rescue Plan Act ("A.R.P.A.").

10. The A.R.P.A. extended the E.R.C. through December 31, 2021. Moreover, it provided a carve out for financially distressed companies.

11. On or about September 14, 2023, the Internal Revenue Service ("I.R.S." or "the Service") announced a mortarium through, at the minimum, the end of 2023 on all E.R.C. claims due to concerns of inaccurately filed claims and the related processing of said claims.

12. On or about October 19, 2023, the Service announced a special withdrawal process to help those who filed an E.R.C. claim and are concerned about its accuracy. This allowed employers to withdraw an E.R.C. claim and in turn avoid future repayment, interest, and penalties.

13. As of April 3, 2024, the date of the filing of this complaint, some claims for E.R.C. are still not being paid by the Service even though the mortarium has ended and the funds are due on said claims.

## II.    LEGAL AND FACTUAL BACKGROUND

14. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

15. At all relevant times, Plaintiff was a for profit corporation with its principal place of business in Baltimore, Maryland. Plaintiff is in the business of providing personal care services.

16. From 2019 through 2021, Plaintiff employed on average 100 or fewer full-time employees.

17. From 2019 through 2021, Plaintiff paid qualified wages to its employees.

18. On March 5, 2020, Maryland Governor Larry Hogan issued a statewide Executive Order declaring a State of Emergency and Existence of Catastrophic Health Emergency due to COVID-19. This declaration cited the threat to Maryland of COVID-19 as a catastrophic health emergency requiring the State to deploy resources and implement the emergency powers of the Governor to protect the health and safety of Marylanders.

19. On March 12, 2020, Maryland Governor Larry Hogan exercised these emergency powers by issuing a statewide Executive Order Prohibiting Large Gatherings and Events and Closing Senior Centers.

20. On March 16, 2020, Maryland Governor issued statewide Executive Order Amending and Restating the Order of March 12, 2020, Prohibiting Large Gatherings and Events and Closing Senior Centers, and Additionally Closing Bars, Restaurants, Fitness Centers, and Theaters.

21. On March 17, 2020, Maryland Governor Larry Hogan renewed the State of Emergency and Existence of Catastrophic Health Emergency due to COVID-19.

22. On March 19, 2020, Maryland Governor Larry Hogan issued Executive Order 20-03-19-01, Amending and Restating the Order of March 16, 2020, Prohibiting Large Gatherings and Events and Closing Senior Centers, and Additionally Closing Various Other Establishments.

23. On March 23, 2023, Maryland Governor Larry Hogan issued Executive Order 20-03-23-01 Amending and Restating the Order of March 19, 2020, Prohibiting Large Gatherings and Events and Closing Senior Centers, and Additionally Closing All Non-Essential Businesses and Other Establishments.

24. Section III of Executive Order 20-03-23-01 closed all Non-Essential Businesses to the general public, effective at 5:00 p.m. on March 23, 2020. The order incorporates as reference all businesses not part of the critical infrastructure sectors identified by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency as "Non-Essential Businesses".

25. Moreover, Section IV, subsection g., declared control over the occupancy and use of certain establishments in Maryland including tattoo parlors; tanning salons; barber shops, and beauty salons and all other establishments that provide esthetic services, provide hair services, or provide nail services. The executive order closed these establishments to the general public, effective as of 5:00 p.m. on March 23, 2020.

26. Plaintiff operates as a beauty salon in the state of Maryland.

27. Plaintiff offers various esthetic services including but not limited to, providing hair services.

28. Effective March 23, 2020, at 5:00 p.m., Plaintiff fully suspended their operations in accordance with Executive Order 20-03-23-01.

29. In addition to the suspension of operations, Plaintiff's gross receipts for the employment tax quarter ending June 30, 2020, was less than 50% of the gross receipts for the same employment tax quarter in the previous year.

30. Accordingly, on or about March 14, 2023, Plaintiff submitted an E.R.C. claim of $47,215.02 as it relates to the employment tax quarter ending June 30, 2020.

31. Plaintiff's gross receipts for the employment tax quarter ending September 30, 2020, was less than 80% of the gross receipts for the same employment tax quarter in the previous year.

32. Accordingly, on or about March 14, 2023, Plaintiff submitted an E.R.C. claim of $62,687.23 as it relates to the employment tax quarter ending September 30, 2020.

33. Plaintiff's gross receipts for the employment tax quarters ending June 30, 2021, and September 30, 2021, were less than 80% of the gross receipts for the same employment tax quarter in 2019.

34. Accordingly, On or about March 14, 2023, Plaintiff submitted an E.R.C. claim of $108,986.47 as it relates to the employment tax quarter ending June 30, 2021.

35. Additionally, on or about March 14, 2023, Plaintiff submitted an E.R.C. claim of $117,045.05 as it relates to the employment tax quarter ending September 30, 2021.

36. Plaintiff maintained adequate and accurate documentation to support the determination of gross receipts for the employment quarters provided above.

37. Plaintiff is therefore an eligible employer under all applicable statutory provisions including the Internal Revenue Code and the Cares Act, as amended by A.R.P.A.

38. On or about February 9, 2024, Plaintiff received Letter CP271 from the Service acknowledging receipt of the E.R.C. claim for tax period ending June 30, 2021.

39. As of April 3, 2024, the date of the filing of this complaint, Plaintiff has not received payment of any refund claim.

40. Pursuant to the foregoing, the Service has failed to fulfill its duty by holding the funds related to Plaintiff's E.R.C. claim without justification.

### III.   JURISDICTION AND VENUE

41. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

42. This Court has jurisdiction by reason of 28 U.S.C. §§ 1331 (civil action arising under the Constitution, laws, or treaties of the United States); 1340 (civil action arising under Act of Congress providing for internal revenue); 1346(a)(1) (civil action against United States for recovery of tax or other sum wrongfully collected under internal revenue laws); and I.R.C. § 7422 (civil action for refund).

43. Venue is proper in the Northern District of Maryland pursuant to 28 U.S.C. §§ 1391 and 1402(a) as Plaintiff is a for-profit, corporation, with its principal place of business at 8736 Belair Road, Perry Hall Crossing Shopping Center, Baltimore, Maryland 21236 in Baltimore County, Maryland.

44. The Defendant is the United States of America.

45. This is a civil action arising under the internal revenue laws of the United States for the refund of federal income taxes and related interest due to Plaintiff.

46. Plaintiff met all jurisdictional prerequisites required under I.R.C. §§ 7422 and 6532.

47. Specifically, as stated more fully *supra*, Plaintiff complied with the requirements of I.R.C. §§ 7422 and 6532 by timely filing a claim for refund via Form 941-X (Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund) for the periods at issue.

48. Plaintiff filed its claims within the two years of payment as specified in I.R.C. §§ 6511 and 6532.

49. More than six months have elapsed since Plaintiff timely filed its claims. Moreover, Plaintiff has not been notified by the I.R.S. that its claims were allowed.

50. Therefore, Plaintiff satisfied the requirements of I.R.C. §§ 6532 and 7422 and venue as well as jurisdiction with this Court is proper.

### IV.   COUNT ONE – CLAIM FOR REFUND

51. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

52. Plaintiff is entitled to its E.R.C. claims for the employment periods ending June 30, 2020, September 30, 2020, June 30, 2021, and September 30, 2021, that were filed on or about March 14, 2023, and remain unpaid by the Service.

53. Section 2301 of the CARES Act allows a credit (employee retention credit or credit) against applicable employment taxes for eligible employers, including tax-exempt organizations, that pay qualified wages, including certain health plan expenses, to some or all employees after March 12, 2020, and before January 1, 2021.  Section 207 of the Relief Act amends section 2301 of the CARES Act to extend the application of the employee retention credit to qualified wages paid after December 31, 2020, and before July 1, 2021, and to modify the calculation of the credit amount for qualified wages paid during that time.

54. Before March 14, 2023, Plaintiff paid all amounts due for the employment tax quarter ending June 30, 2020. In total, Plaintiff paid sixteen thousand six hundred sixty-eight and 25/100 dollars ($16,668.25) in employment tax to the I.R.S. for the employment tax quarter ending June 30, 2020.

55. Before March 14, 2023, Plaintiff paid all amounts due for the employment tax quarter ending September 30, 2020. In total, Plaintiff paid sixty-seven thousand six hundred twenty-seven and 25/100 dollars ($67,627.25) in employment tax to the I.R.S. for the employment tax quarter ending September 30, 2020.

56. Before March 14, 2023, Plaintiff paid all amounts due for the employment tax quarter ending June 30, 2021. In total, Plaintiff paid fifty-five thousand six hundred three and 32/100 dollars ($55,603.32) in employment tax to the I.R.S. for the employment tax quarter ending June 30, 2021.

57. Before March 14, 2023, Plaintiff paid all amounts due for the employment tax quarter ending September 30, 2021. In total, Plaintiff paid sixty thousand three hundred thirty and 02/100 dollars ($60,330.02) in employment tax to the I.R.S. for the employment tax quarter ending September 30, 2021.

58. On or about March 14, 2023, Plaintiff filed Form 941-X for the employment tax quarters ending June 30, 2020, September 30, 2020, June 30, 2021, and September 30, 2021, to claim a refund related to the E.R.C. to which Plaintiff was lawfully entitled in the amount of three hundred thirty-five thousand nine hundred thirty-three and 77/100 dollars ($335,933.77).

59. Plaintiff filed its claim for refund within three years of filing the return as specified in I.R.C. § 6511.

60. Plaintiff's suit under I.R.C. § 7422(a) is filed in accordance with I.R.C. § 6532(a)(1); *i.e.*, more than six months have elapsed since the filing of Plaintiff's Form 941-X claim for refund with the I.R.S.

61. Accordingly, Plaintiff is due a refund of its E.R.C. for federal employment tax for the quarters ending June 30, 2020, September 30, 2020, June 30, 2021, and September 31, 2021, is the sole owner of the claim for refund, and has made no assignment of its claim.

## V.    COUNT TWO – CLAIM FOR INTEREST

62. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

63. As of the date of this filing, Plaintiff has not received any correspondence from the Service regarding the processing and or payment of its E.R.C. claims for the employer periods ending June 30, 2020, September 30, 2020, June 30, 2021, and September 31, 2021.

64. Pursuant to I.R.C. § 6611, interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621. Moreover, pursuant to I.R.C. § 6611(b), such interest shall be allowed and paid, in the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon.

65. Plaintiff filed its E.R.C. claims for the employer periods ending June 30, 2020, September 30, 2020, June 30, 2021, and September 31, 2021, on or about March 14, 2023.

66. As of the date of this filing, Plaintiff has not received its E.R.C. claims for the employer period ending June 30, 2020, September 30, 2020, June 30, 2021, and September 31, 2021,

nor has it received any correspondence regarding why said payment has not been effectuated.

67. Accordingly, Plaintiff is statutorily due interest for its E.R.C. claim for the employer periods June 30, 2020, September 30, 2020, June 30, 2021, and September 31, 2021, until the date payment is made.

## VI.   COUNT THREE – CLAIM FOR ATTORNEYS' FEES

68. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

69. As of the date of this filing, Plaintiff has not received any correspondence from the Service regarding the processing and or payment of its E.R.C. claims for the employer periods ending June 30, 2020, September 30, 2020, June 30, 2021, and September 31, 2021.

70. Pursuant to I.R.C. § 7430, in any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and reasonable litigation costs incurred in connection with such court proceeding.

71. On or about April 3, 2024, Plaintiff filed its complaint against the United States, in connection with a request for a refund.

72. Accordingly, Plaintiff requests an award of costs and attorneys' fees as incurred as a result of the administrative and litigation-based representation as required to facilitate a resolution to this claim for refund.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Enter judgment for Plaintiff in the amount of two hundred eighty thousand two hundred eighty-eight and 34/100 dollars ($280,288.34).

(B) Enter judgment for Plaintiff for interest that is unpaid by the United States.

(C) Enter judgment for Plaintiff for reasonable attorneys' fees including but not limited to litigation and administrative costs.

(D) Such other relief to which Plaintiff is entitled to at law or in equity.

(E) Plaintiff requests a jury trial for all issues triable by a jury pursuant to Federal Rule of Civil Procedure 38(b).

Dated: April 9, 2024                          Respectfully Submitted,

GLEN E. FROST, Esq.
Bar No. 29014
Frost & Associates, LLC
839 Bestgate Road, Suite 400
Annapolis, MD 21401
Phone: (410) 497-5947
Facsimile: (888) 235-8405
Email: glen.frost@frosttaxlaw.com

J. PETER HAUKEBO, Esq.
Bar No. 18307
Frost & Associates, LLC
839 Bestgate Road, Suite 400
Annapolis, MD 21401
Phone: (410) 497-5947
Facsimile: (888) 235-8405
Email: peter.haukebo@frosttaxlaw.com

MICHAEL J. MARCH, JR., Esq.
Bar No. 20377
Frost & Associates, LLC
839 Bestgate Road, Suite 400
Annapolis, MD 21401
Phone: (410) 497-5947
Facsimile: (888) 235-8405
Email: michael.march@frosttaxlaw.com


ROBERT M. BRALAND, Esq.
Bar No. 30440
Frost & Associates, LLC
839 Bestgate Road, Suite 400
Annapolis, MD 21401
Phone: (410) 497-5947
Facsimile: (888) 235-8405
Email: Robert.Braland@frosttaxlaw.com


*Counsels for Plaintiff*
*Salon 8736, Inc.*